**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| 1741 N. Western Ave Acquisitions, LLC, | ) | Case No. 23-12072 |
| | ) | |
| Debtor. | ) | Honorable Timothy A. Barnes |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on February 18, 2025, at 9:00 a.m., I will appear before the Honorable Timothy A. Barnes, or any judge sitting in that judge's place, **either** in Courtroom 744 of the Dirksen Federal Building **or** electronically as described below, and present **MICHAEL J. LERNER'S OBJECTION TO THE CLAIM OF MICHAEL N. LERNER,** , a copy of which is attached.

**Important:  Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government.  All others must appear in person.**

**To appear by Zoom using the internet,** go to this link: https://www.zoomgov.com/. Then enter the meeting ID and passcode.

**To appear by Zoom using a telephone,** call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

**Meeting ID and passcode**. The meeting ID for this hearing is 161 329 5276 and the passcode is 433658 .  The meeting ID and passcode can also be found on the judge's page on the court's website.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

                                                **MICHAEL J. LERNER, Movant**

                                          By:  _/s/ Adam B. Rome_____
                                                One of his attorneys

Adam B. Rome (ARDC #6278341)
GREIMAN, ROME & GRIESMEYER, LLC
205 W. Randolph St., Ste. 2300
Chicago, Illinois 60606
T: (312) 428-2750
F: (312) 332-2781 (facsimile)
arome@grglegal.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 14, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to those participants registered with the ECF System including those listed below:

Patrick S Layng USTPRegion11.ES.ECF@usdoj.gov

Adam Brief Ustpregion11.es.ecf@usdoj.gov

Jeffrey C. Dan (jeffd@goldmclaw.com)

Matthew McClintock (mattm@goldmclaw.com)

Ainsley G. Moloney (ainsleym@goldmclaw.com)

     I further certify that on January 14, 2025, I served the foregoing to those individuals listed below via US Mail by placing the same in a properly addressed stamped envelope to the addresses listed and placing the same in the mailbox located at 205 W. Randolph St., Chicago, Illinois before 5:00 p.m.:

| | |
|---|---|
| Michael N. Lerner<br>1415 N. Dayton, #103<br>Chicago, IL 60642 | Michael N. Lerner<br>805 N. Peoria St., 5th Floor<br>Chicago, IL 60642 |

                                                By:  */s/ Adam B. Rome*
                                                  Adam B. Rome (ARDC #6278341)
                                                  Greiman, Rome & Griesmeyer, LLC
                                                  205 W. Randolph St., Ste. 2300
                                                  Chicago, Illinois 60606
                                                  T: (312) 428-2750
                                                  F: (312) 332-2781
                                                  arome@grglegal.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| 1741 N. Western Ave Acquisitions, LLC, | ) | Case No. 23-12072 |
| | ) | |
| Debtor. | ) | Honorable Timothy A. Barnes |

**MICHAEL J. LERNER'S OBJECTION TO THE CLAIM OF MICHAEL N. LERNER**

Michael J. Lerner ("Movant"), by and through his attorney, Adam B. Rome of Greiman, Rome & Griesmeyer, LLC, hereby objects to the claim of Michael Nathan Lerner ("MNL"):

### I.  PRELIMINARY STATEMENT

The Debtor was a single purpose real estate investment company. When the Debtor filed its bankruptcy schedules, the Debtor identified MNL—then, its putative manager/member—as an unsecured creditor, with a claim of $573,412 (the "MNL Claim"). MNL never filed a separate proof of claim. The MNL Claim is invalid on its face because: it lacks any description of the basis for the claim and it lacks the date(s) the claim was incurred, both of which are required by Official Form 206E/F. As such, this Court should disallow the MNL Claim on that basis alone.

If, however, the Court were to find those omissions immaterial, then a rebuttable presumption of the claim's validity would arise, in which case Movant would need to present information with sufficient probative force to call into question the validity of the MNL Claim. Here, Movant presents the Court with the only support MNL provided to him: a spreadsheet seemingly from the records of the Debtor. This spreadsheet lists payments totaling $573,412 as MNL's "Contributions"—that is, equity in the Debtor. Contributions to equity are not valid "claims" under the Bankruptcy Code, so the MNL Claim should be disallowed.

1

But even if those payments were not considered contributions to equity, the spreadsheet provides no evidence that the payments listed on it were made for the benefit of the Debtor. On the contrary, several of the entries suggest that the payments were made to Chris Lerner—the brother of MNL (and son of Movant) who played no role in the Debtor's operations. And if MNL actually did make all the payments on the spreadsheet for the benefit of the Debtor, there is still no evidence that the Debtor ever agreed to pay him back. For these several reasons, Movant easily rebuts any presumption of validity.

Consequently, this Court should disallow the MNL Claim in whole.

## II.    LEGAL STANDARD

"A claim or interest, proof of which is properly filed under section 501 of the Bankruptcy Code, is deemed allowed, unless a party in interest objects." *In re Spiegel*, 657 B.R. 34, 52 (Bankr. N.D. Ill. 2024) (citing 11 U.S.C. § 502(a)). "This gives rise to a rebuttable presumption in favor of the validity and the amount of the claim with the claim existing prima facie evidence in support thereof." *Id.*; *see also* FED. R. BANKR. P. 3001(f).

"Unless a filed claim is invalid on its face (e.g., late, incomplete, unsigned or failing to attach required support for a claim asserted as secured), '[c]laim objectors carry the initial burden to produce some evidence to overcome this rebuttable presumption.'" *In re Spiegel*, 657 B.R. at 52 (quoting *In re McCoy*, 355 B.R. 69, 72 (Bankr. N.D. Ill. 2006)). "The objecting party, unless the claim is invalid on its face or is legally deficient for some other reason, must file with its objection evidence of sufficient probative force to overcome the presumptive allowance of the claim *with his or her objection*." *Id.* at 53. "'Once the objector has produced some basis for calling into question allowability of a claim, the burden then shifts back to the claimant to produce evidence to meet the objection and establish that the claim in fact is allowable.'" *Id.* (quoting *In*

2

*re O'Malley*, 252 B.R. 451, 456 (Bankr. N.D. Ill. 1999)). "The third stage … is akin to summary judgment. It allows the court to weigh whether there exists an evidentiary dispute sufficient to require an evidentiary hearing." *Id*.

"[T]he objecting party … bears the initial burden to overcome the prima facie presumption should such presumption arise, but the scheduled creditor … carries the ultimate burden of persuasion to show his entitlement to the" claim. *In re Spiegel*, 657 B.R. at 54.

### III.  BACKGROUND FACTS

On September 12, 2023, the Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq*. On October 13, 2023, the Debtor filed its Schedule E/F, identifying its alleged unsecured creditors. (Dkt. 23 at 7). At that time, MNL was the putative manager/member of the Debtor. On Schedule E/F, the Debtor identified MNL as an unsecured creditor, with a claim of $573,412 (previously defined as the "MNL Claim"):

| 3.3 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $573,412.00 |
|---|---|---|---|
| | Michael N. Lerner<br>1415 N. Dayton<br>#103<br>Chicago, IL 60642<br>Date(s) debt was incurred __<br>Last 4 digits of account number __ | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br>Basis for the claim: __<br>Is the claim subject to offset? ■ No  ☐ Yes | |

(*Id*.). The information about the Debtor's alleged debt to MNL was certified to be true and correct by MNL. (*Id*. at 1).

On March 26, 2024, Movant filed a Proof of Claim in the amount of $517,000 (not including interest or other charges) based on money loaned to the Debtor. (Claim 4-1).

On November 15, 2024, this Court confirmed the Third Amended Plan of Liquidation (the "Plan"). (Dkt. 94). Movant's claim is considered a "Class 3" unsecured claim under the Plan. (*See* Dkt. 94 at 17). Under Section 4.1 of the Plan, any "parties-in-interest may object to the

3

amount or validity of any Claim within sixty (60) days after the Confirmation Date…." (Dkt. 94 at 18). Section 4.1 further provides:

> The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan. Any funds that would be paid to holders of Disputed Claims will be held in the IOLTA account of the Debtor's attorneys until a Final Order has been entered regarding any Claim Objections. All allowed claims will be paid in their pro rata share as if any Disputed Claims are allowed. Additional payments will be made after the Disputed Claims are resolved by a Final Order.

(*Id*.).

Because there is no proof of claim supporting the scheduled MNL Claim, undersigned counsel requested proof of the claim from MNL's counsel. MNL's counsel explained that the documentation had been produced in discovery. When we were unable to identify any supporting documentation in the production, MNL's counsel sent us, on November 27, 2024, a spreadsheet allegedly "demonstrating payments by Michael Lerner on behalf of" the Debtor. A copy of this spreadsheet is attached as **Exhibit A**. The spreadsheet has a section titled "MNL – Distribution" listing five payments totaling $44,132.07. (Ex. A). The spreadsheet has another section titled "MNL – Contribution" listing various amounts of money that total $617,544.05. (*Id*.). Subtracting the alleged distributions from the alleged contributions equals $573,411.98 (which, rounded to the nearest dollar, is the same amount as the MNL Claim). (*Id*.).

### IV. ARGUMENT

Movant objects to the validity and amount of the MNL Claim under Section 502(b) of the Bankruptcy Code and pursuant to Section 4.1 of the Plan. The Court should disallow the MNL Claim because it is invalid on its face. But even if the MNL Claim were facially valid, Movant would prevail under the burden-shifting framework set forth in *In re Spiegel*.

4

A. **The MNL Claim is invalid on its face.**

The MNL Claim is invalid on its face, so no rebuttable presumption in favor of its validity ever arises.

The MNL Claim is set forth in the Debtor's schedules, rather than in a proof of claim. (Dkt. 23 at 7, § 3.3). "[W]hile a proof of claim executed and filed in accordance with the rules is entitled to be *prima facie* allowance, Fed. R. Bankr. P. 3001(f), the same holds true for the scheduling of claims." *In re Spiegel,* 657 B.R. at 54. "As there is no requirement that a debtor attach supporting documentation on a scheduled claim, such a claim obtains its presumed allowance on a much ***lower*** standard." *Id*. "Compliance with what information is required in the schedules is therefore all the more important as failures are most likely material." *Id*.

The MNL Claim is incomplete. It is scheduled at Section 3.3 of Official Form 206E/F (the "Form"). (Dkt. 23 at 7). The Form requires the name and address of the creditor; **the date(s) the debt was incurred**; the last 4 digits of an account number (if applicable); the amount of the claim; an indication of whether the claim is contingent; an indication of whether the claim is unliquidated; an indication of whether the claim is disputed; **the basis for the claim**; and an indication of whether the claim is subject to offset. Here, the Debtor failed to provide (a) the date(s) the MNL Claim debt was incurred and (b) the basis for the MNL Claim.

Under the facts of *In re Spiegel*, the omission of the date of the claim and a description of the type of claim were found to be "clear[ly]" material. *In re Spiegel*, 657 B.R. at 56 (but considering the information on Official Form 106E/F). Here, too, the omissions are material. Until MNL's counsel sent us a spreadsheet on November 27, 2024, there was no way for Movant to determine how or when the alleged $573,412 debt to MNL arose. During the 13 months between the date MNL's claim was first scheduled and the date we received the spreadsheet, Movant was

5

left to speculate how and when the claim arose. (Even after receiving the spreadsheet, we are still unsure what the debt is—it appears that MNL is potentially seeking reimbursement for dozens of payments he (potentially) made between 2019 and 2023.)

"If a claim fails to satisfy the requirements of the Official Form or the Bankruptcy Rules in a material way, the objection goes no further and the claim is disallowed." *In re Spiegel,* 657 B.R. at 53. Because the MNL Claim does not satisfy the requirements of the Official Form, and because those omissions were material, the Court should disallow the claim.

**B.     Even if the MNL Claim were facially valid, Movant would prevail under the burden shifting framework.**

Were the Court to find that the omissions on the Form were immaterial, then a rebuttable presumption of validity would arise would and it would be up to Movant "to introduce evidence or legal authority of probative force equal to or greater to presumption of allowance." *In re Spiegel*, 657 B.R. at 53.

Here, Movant introduces the spreadsheet that MNL's counsel provided via email.[1] (Ex. A). The information on this spreadsheet calls into question both the validity and amount of the MNL Claim under section 502(b)(1) of the Bankruptcy Code, which results in disallowance of a claim whenever the law would find a claim unenforceable against the Debtor.

First, the spreadsheet shows that both MNL and the Debtor considered the payments identified on the spreadsheet to be *capital contributions*—not debt. Indeed, the two parts of the spreadsheets are labeled "MNL – Distributions" and "MNL – Contributions." In addition, the filename of the spreadsheet (which, again, was provided to us by legal counsel for MNL and the

---

[1] Movant does not concede that the spreadsheet would constitute admissible evidence were MNL to attempt to use it to support his Claim. We do not know if this is a proper business record of the Debtor, and it has never been authenticated. It is admissible for Movant because of the party admissions it contains, and because at this stage, Movant needs to introduce evidence only of probative force equal to that which the claimant has introduced.

6

Debtor) is "1741 N WESTERN – MNL EQUITY INFO.xlsx." In other words, the spreadsheet tracked MNL's equity in the Debtor, *not* the Debtor's debt obligations to MNL. Accordingly, the MNL Claim is not a "claim" under the Bankruptcy Code. "Although 11 U.S.C. §§ 101(5) and 101(12) define 'claim' as a right to payment and 'debt' as liability on a claim, these definitions obviously do not include a right to payment based on an equity security or other interest in the debtor arising from capital contributions." *In re Georgetown Bldg. Associates, Ltd. P'ship*, 240 B.R. 124, 139 (Bankr. D.D.C. 1999). The MNL claim should, therefore, be disallowed.

Second, even if the payments listed on the spreadsheet were not considered capital contributions, the spreadsheet would provide insufficient support for the MNL Claim. The spreadsheet provides little indication that the payments listed on the spreadsheet were (a) made by MNL, or (b) made for the benefit of the Debtor. In fact, several of the descriptions on the spreadsheet suggest the payments were made to Chris Lerner—MNL's brother and Movant's son—*not* for the benefit of the Debtor. For instance, there the spreadsheet includes:

- A $10,0000 entry, dated May 25, 2021, with a note that says "Chris."

- A $30,000 entry, dated July 26, 2021, with a note that says "Chris."

- A $6,500 entry, dated September 15, 2022, with a description that says "payment to MCZ Development – Chris."

- A $13,711 entry, dated October 3, 2022, with a description that says "First Eagle-payment to Chris."

Chris Lerner was not an employee of the Debtor, and there is no valid basis for the estate of the Debtor to reimburse MNL for payments he might have made to his brother.

Other payments are suspect because they appear to be for personal expenses. For instance, a $28,000 entry dated September 15, 2022 is described as "Amex and payments for gym." Also listed is a $19,033.50 entry dated "2020-2021" and described as "The Home Depot/Amex."

7

Similarly, there is another entry of $15,000 also dated "2020-2021" and labeled as "The Home Depot Credit Card." And there are over $70,000 of other payments described as "First Eagle"—a bank at which, on information and belief, MNL had a personal account.[2] There is absolutely no indication of how—*or if*—these payments benefitted the Debtor.

The above payments are particularly concerning because MNL has a history of using company funds for personal expenses. Indeed, in recent state court litigation between MNL and the Movant, the court found (a) that MNL used corporate funds from numerous companies he managed "for personal expenses" and (b) that MNL "commingl[ed]" company funds "with his personal bank accounts." A true and correct copy of the Order containing these findings is attached hereto as **Exhibit B**.

Finally, even if MNL made the payments identified on the spreadsheet for the benefit of the Debtor, there is no proof whatsoever that the Debtor agreed to ever reimburse MNL for those payments.

Because Movant has produced some basis for calling into question the allowability of the MNL Claim, the burden would shift back to MNL to produce evidence to meet the objection and establish that the claim is allowable. *In re Spiegel*, 657 B.R. at 53. (But as established further above, because the MNL Claim is facially invalid, there is no reason to ever get that far.)

## V.    CONCLUSION

WHEREFORE, Movant, Michael J. Lerner respectively requests that the Court disallow the MNL Claim as facially invalid. If, however, the Court finds the MNL Claim facially valid, Movant would ask the Court to disallow that claim under the burden-shifting framework set forth in *In re Spiegel*.

---

[2] Also listed are $165,000 in payments to "DOM Construction." While those are, perhaps, not personal expenses, there is no indication how or if payments to DOM Construction benefitted the Debtor.

8

Dated: January 14, 2025  Respectfully submitted,

**MICHAEL J. LERNER, Movant**

By: */s/ Adam B. Rome*
    One of his attorneys

Adam B. Rome (ARDC #6278341)
GREIMAN, ROME & GRIESMEYER, LLC
205 W. Randolph St., Ste. 2300
Chicago, Illinois 60606
T: (312) 428-2750
F: (312) 332-2781 (facsimile)
arome@grglegal.com

9

# EXHIBIT A

|  | 2019 Date | Check | Name | Amount |  |  |
|---|---|---|---|---|---|---|
| MNL - Distribution | 5/31/2019 | 1039 | MNL | 22,000.00 |  |  |
|  | 8/26/2019 | transfer | MNL | 8,000.00 |  |  |
|  | 10/30/2019 | transfer | MNL | 6,000.00 |  |  |
|  | 8/26/2019 | 1046 | MNL | 900.00 |  |  |
|  | 10/24/2019 | transfer | MNL | 7,232.07 |  |  |
|  |  |  |  | $ 44,132.07 |  |  |

| MNL - Contribution |  |  |  |  |  |
|---|---|---|---|---|---|
|  | 5/21/2019 | 785 | DOM Construction | 125,000.00 | not recorded in QB or AppFolio |  |
|  | 7/31/2019 | 800 | DOM Construction | 40,000.00 | not recorded in QB or AppFolio |  |
|  | 10/16/2019 | 771 | 2RZ | 1,407.00 | not recorded in QB or AppFolio |  |
|  | 8/17/2020 |  | Heartland Bank | 16,000.00 |  |  |
|  | 3/31/2021 |  | Heartland Bank | 16,000.00 | transfer to Heartland bank to cover interest payment |  |
|  | 5/25/2021 |  | First Eagle | $ 10,000.00 | not recorded in QB or AppFolio | Chris |
|  | 7/26/2021 |  | First Eagle | $ 30,000.00 | not recorded in QB or AppFolio | Chris |
|  | 2020-2021 |  | The Home Depot/ Amex | $ 19,033.50 | not recorded in QB or AppFolio |  |
|  | 2020-2021 |  | The Home Depot Credit card | $ 15,000.00 | not recorded in QB or AppFolio |  |
|  | 5/5/2022 |  | First Eagle Bank | $ 20,000.00 |  |  |
|  | 5/31/2022 |  | RE Tax payment | $ 43,201.16 |  |  |
|  | 5/31/2022 |  | RE Tax payment | $ 907.22 |  |  |
|  | 7/6/2022 |  | RE Tax payment | $ 43,001.52 |  |  |
|  | 7/6/2022 |  | RE Tax payment | $ 903.03 |  |  |
|  | 7/7/2022 |  | RE Tax payment | $ 23,169.98 |  |  |
|  | 7/7/2022 |  | RE Tax payment | $ 486.57 |  |  |
|  | 7/15/2022 |  | First Eagle Bank | $ 20,000.00 |  |  |
|  | 9/13/2022 |  | RE Tax payment | $ 85,178.28 |  |  |
|  | 9/15/2022 |  | payment to  MCZ Development- Chris | $ 6,500.00 |  |  |
|  | 9/15/2022 |  | Amex and payments for gym | $ 28,000.00 |  |  |
|  | 9/20/2022 |  | First Eagle Bank | $ 600.00 |  |  |
|  | 9/30/2022 |  | First Eagle Bank | $ 50,000.00 |  |  |
|  | 10/18/2023 |  | City of Chicago / reinspection | $ 600.00 |  |  |
|  | 10/19/2022 |  | First Eagle | $ 1,545.00 |  |  |
|  | 10/3/2022 |  | First Eagle- payment to Chris | $ 13,711.00 | not recorded in QB or AppFolio |  |
|  | 1/24/2022 |  | First Eagle/ cleaning | $ 300.00 |  |  |
|  | 11/15/2022 |  | Zelle To EL CEJAS LANDSCAPING &amp; SNOW RE - +1-877-351- | $ 800.00 | not recorded in QB or AppFolio |  |
|  | 2/28/2023 |  | City of Chicago / reinspection | $ 600.00 | not recorded in QB or AppFolio |  |
|  | 3/27/2023 |  | Peak Realty Chicago | $ 4,999.79 | not recorded in QB or AppFolio |  |
|  | 9/18/2023 |  | City of Chicago / final certificate of ocupancy | $ 600.00 | not recorded in QB or AppFolio |  |
|  |  |  |  | 617,544.05 |  |  |
|  |  |  | MNL- balance | $ 573,411.98 |  |  |

# EXHIBIT B

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| JAMIE LERNER, individually, and as the Trustee of the Jamie Lerner Trust dated September 30, 2009, MCZ DEVELOPMENT CORP., and MICHAEL J. LERNER, <br><br> Plaintiffs, <br><br> vs. <br><br> MICHAEL NATHAN LERNER, et. al., <br><br> Defendants. | No. 2023 CH 05140 |

**ORDER**

_March 20, 2024_

This cause coming to be heard on Plaintiff's fully briefed Motion to Appoint Receiver ("Motion"), due notice having been given, and the Court being fully advised in the premises, while conducting oral argument on Plaintiff's Motion only, the Court provides as follows.

**THE COURT HEREBY FINDS:**

a. After reviewing the Parties' fully briefed Motion, and engaging in oral argument, the Court finds that there are no material issues of disputed fact before the Court that would warrant conducting an evidentiary hearing to adjudicate Plaintiff's Motion.

b. The Jamie Lerner Trust dated September 30, 2009 ("Trust"), has a clear right to the property held by the Defendant Receiver Companies[1] through its 50% equitable interest in each entity.

c. That the Defendant Receiver Companies are in danger of immediate loss from neglect, waste, misconduct and/or insolvency based on the actions of Defendant, Michael N. Lerner.

d. The Court further finds that Michael N. Lerner has placed the Defendant Receiver Companies in danger of loss from neglect, waste, misconduct and/or insolvency based on his: (i) use of the Defendant Receiver Companies' funds for personal expenses; (ii) commingling of Defendant Receiver Companies' funds with his personal bank accounts;

---

[1] Defendant Receiver Companies shall mean: (i) 919 N. Larrabee, LLC; (ii) 1332 N. Western Ave. Acquisition LLC; (iii) 1338-1340 W Cullerton Acquisitions LLC; (iv) Armitage Acquisitions II, LLC; (v) Bosworth Acquisitions LLC; (vi) Jazz Hands LLC; (vii) JM3 Bosworth, LLC; (viii) Leavitt Acquisitions, LLC; (ix) Lister Acquisitions, LLC; (x) MCZ at Properties JV, LLC; (xi) MCZ Urban, LLC; (xii) Ott Acquisitions, LLC; (xiii) St Paul LLC; (xiv) St Paul Finance II, LLC; (xv) West 18th Place Acquisitions LLC; and (xvi) Wilmot Acquisitions LLC.

1

and (iii) decisions to encumber the Defendant Receiver Companies with liens to secure personal loans.

e.  The Trustee established that there is no adequate remedy at law, other than installing a receiver over the Defendant Receiver Companies, that will preserve the property of the Defendant Receiver Companies during the pendency of this action.

f.  The Trustee established that there is a reasonable probability that Plaintiffs will ultimately prevail in the litigation.

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion to Appoint Mathew Brash, as receiver, with general powers to manage the business activities, over the Defendant Receiver Companies is granted.

2. The Court continues this matter to April 5, 2024, at 10:15 a.m., at which time the Court will enter an order setting out the terms of Mr. Brash's appointment as receiver.

3. The April 15, 2024, evidentiary hearing is stricken as moot.

4. The April 5, 2024, court hearing will be heard at 10:15AM via-Zoom (Meeting ID: 928 9663 2736/Password: 813107 or by telephone (312) 626-6799).

Judge Pamela McLean Meyerson

MAR 25 2024

Circuit Court – 2097

ENTER: _____
JUDGE

Order Prepared By:
Adam B. Rome
Greiman, Rome & Griesmeyer, LLC
205 W. Randolph St., Ste. 2300
Chicago, IL 60606
Firm ID: 47890
arome@grlegal.com

2